UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM RICHTER, | ) | |
| | ) | |
| Plaintiff, | ) | 14 C 6480 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., SALEH | ) | |
| OBAISI, M.D., and ANN HUNDLEY DAVIS, M.D., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

William Richter filed this suit under 42 U.S.C. § 1983 against Dr. Saleh Obaisi, Dr. Ann Hundley Davis, and Wexford Health Sources, Inc., alleging deliberate indifference to his medical needs in violation of the Eighth Amendment. Doc. 8. The court recruited counsel, who has performed ably, on Richter's behalf. Doc. 5 (Darrah, J.). Discovery has closed, and a jury trial is set for November 13, 2017. Docs. 49, 58. Defendants have moved for summary judgment. Doc. 60. The motion is granted in part and denied in part.

**Background**

The following facts are stated as favorably to Richter as permitted by the record and Local Rule 56.1. *See Woods v. City of Berwyn*, 803 F.3d 865, 867 (7th Cir. 2015). In considering Defendants' motion, the court must assume the truth of those facts, but does not vouch for them. *See Arroyo v. Volvo Grp. N. Am.*, 805 F.3d 278, 281 (7th Cir. 2015).

Richter, an inmate in the Illinois Department of Corrections ("IDOC"), was housed at all relevant times at Stateville Correctional Center. Doc. 62 at ¶ 1. Wexford contracts with IDOC to provide medical services to inmates at Stateville. *Id.* at ¶ 2. Dr. Obaisi is employed by

Wexford and serves as Stateville's medical director. *Id*. at ¶ 3. Dr. Davis was employed by Wexford as a physician at Stateville. *Id*. at ¶ 4.

Richter was involved in a workplace accident prior to his incarceration that left him with chronic back pain, and he also has a herniated disc of unknown origin. *Id*. at ¶ 8. To address these maladies, Richter took several narcotic pain medications on a daily basis before being incarcerated. *Id*. at ¶ 10. In June 2011, after being incarcerated, he developed swelling and discomfort in his left testicle, a condition later diagnosed as a hydrocele. *Id*. at ¶ 12. A hydrocele is a liquid-filled cyst that can cause discomfort. *Id*. at ¶ 43. Hydroceles do not pose a health risk if left untreated. *Ibid*.

Dr. Obaisi first saw Richter on August 17, 2012. *Id*. at ¶ 41. Richter complained of lower back pain, and Dr. Obaisi noted the existence of the hydrocele. *Ibid*. Dr. Obaisi discontinued Richter's narcotic regimen (consisting of Ultram, *id*. at 39), and instead prescribed Motrin, Robaxin, and Neurotonin (a neurogenic pain medication), and also injected a long-acting steroid, Depomedrol. *Id*. at ¶¶ 45-46. Richter submitted a grievance complaining that this new regimen was inadequate and that he needed a special pillow, shoes, and pads to treat his chronic pain. *Id*. at ¶ 47.

Dr. Obaisi saw Richter again on October 31, 2012; the hydrocele did not come up, but Richter continued to complain of back pain. *Id*. at ¶ 49. Dr. Obaisi renewed the Motrin prescription and added two doses of Tylenol. *Ibid*. Richter then submitted another grievance, again complaining that the treatment was inadequate for his back pain. *Id*. at ¶ 51.

On May 17, 2013, Richter saw Dr. Davis for the first time. *Id*. at ¶ 52. Richter did not mention back pain, but instead complained of lower abdominal pain. *Ibid*. Dr. Davis examined Richter and found swelling of his left testicle, which she determined did not arise from a hernia

2

but instead was a case of orchitis, an inflammatory condition that may be associated with a hydrocele. *Id*. at ¶¶ 52-53. To address any possible infection, Dr. Davis prescribed an antibiotic. *Id*. at ¶ 54.

Shortly thereafter, Richter saw Dr. Davis again. *Id*. at ¶ 55. Richter again complained of testicular pain, and Dr. Davis detected the hydrocele, which swelling had prevented her from seeing at their first appointment. *Id*. at ¶ 56. Dr. Davis diagnosed Richter with testicular pain secondary to the hydrocele and prescribed Tylenol #3. *Id*. at ¶ 57. After this visit, Dr. Davis's role in Richter's treatment was limited to renewing his prescriptions. *Id*. at ¶¶ 71-72, 74, 76, 78.

On May 29, Richter returned to Dr. Obaisi, again complaining of abdominal pain, but not back pain. *Id*. at ¶ 58. Dr. Obaisi confirmed the presence of the hydrocele and ruled out prostate issues, and then modified Richter's prescription regimen and ordered an ultrasound and other tests on the hydrocele. *Id*. at ¶¶ 58-59. On June 11, Richter saw Dr. Obaisi again, complaining of stomach pain and low back pain, but nothing related to the hydrocele. *Id*. at ¶ 60.

On June 19, Richter underwent an ultrasound of his scrotum. *Id*. at ¶ 63. Although the radiologist who evaluated the ultrasound reported that the hydrocele was likely "secondary to epididymitis," Dr. Obaisi disagreed on the ground that prior ultrasounds of Richter's scrotum revealed no indication of infection. *Id*. at ¶¶ 63-64. Based on this, as well as on the fact that Dr. Davis's antibiotic treatment had ruled out infection, Dr. Obaisi concluded that the hydrocele was not secondary to infection. *Id*. at ¶ 64.

From that point until May 16, 2016, Richter had twelve more appointments with Dr. Obaisi, where he raised a variety of complaints at different times, including hip pain, numbness, and oral pain, as well as back pain and the hydrocele. *Id*. at ¶¶ 65, 67, 70, 75, 87, 89, 91, 94-95, 97-98. At one appointment, Dr. Obaisi offered to aspirate (drain with a syringe) the hydrocele,

but Richter reported that the pain was not "great" and thus declined that treatment. *Id*. at ¶ 75. In addition, at various points during Richter's time at Stateville, Dr. Obaisi renewed or modified his pain prescriptions. *Id*. at ¶¶ 73, 79, 82, 88, 92.

Although both sides agree that Richter is, or at least may be, a "candidate for surgery" to treat his back pain, Doc. 74 at ¶ 11, they disagree over whether Dr. Obaisi referred Richter for offsite evaluation and treatment. Dr. Obaisi testified in his deposition that he offered to refer Richter for an offsite evaluation of his back pain. Doc. 62 at ¶¶ 24, 27 (Richter disputes Defendants' characterization of Dr. Obaisi's testimony, Doc. 72 at 2 ¶ 27, but not the testimony itself, so the court will consider the testimony). By contrast, Richter testified at his deposition that Dr. Obaisi did *not* offer such a referral. Doc. 72 at 6 ¶ 6.

## Discussion

The Eighth Amendment entitles prisoners to "adequate medical care." *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006); *see also Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("Under the Eighth Amendment, [the plaintiff] is not entitled to demand specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her."). To prevail on his claim against Drs. Obaisi and Davis, Richter must show that they "display[ed] deliberate indifference to a serious medical need." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 301 (7th Cir. 2010); *see also Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference has an objective element, that Richter's medical condition was "objectively serious," and a subjective element, that Defendants "acted with a sufficiently culpable state of mind" in that they had "subjective knowledge of the risk to [Richter's] health and … disregard[ed] that risk." *Thomas*, 604 F.3d at 301.

"An objectively serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (internal quotation marks omitted). "A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Ibid.*; *see also Reed v. McBride,* 178 F.3d 849, 852-53 (7th Cir. 1999).

The subjective element requires the plaintiff to "show that the official acted with the requisite culpable state of mind. This inquiry has two components. The official must have subjective knowledge of the risk to the inmate's health, and the official also must disregard that risk." *Gayton*, 593 F.3d at 620 (internal quotation marks and citation omitted); *see also Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) ("[T]he subjective prong of the deliberate indifference claim … requires that the official must have actual, and not merely constructive, knowledge of the risk in order to be held liable … ."). A plaintiff "need not present direct evidence of the official's state of mind: Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Gevas*, 798 F.3d at 480 (internal quotation marks omitted); *see also Borello v. Allison*, 446 F.3d 742, 747-48 (7th Cir. 2006); *Fisher v. Lovejoy*, 414 F.3d 659, 662 (7th Cir. 2005).

The court examines the totality of the medical care to determine whether the prisoner suffered "the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Gamble*, 429 U.S. at 103 (internal quotation marks and citation omitted); *see also Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000) (same); *Gutierrez v. Peters*, 111 F.3d 1364, 1374-75

(7th Cir. 1997) (same). The fact that a prisoner has received some medical treatment does not necessarily defeat his claim, because deliberate indifference to a serious medical need can be manifested by "blatantly inappropriate" treatment "likely to seriously aggravate his condition," *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005) (internal quotation marks omitted), or by "woefully inadequate action," *Reed*, 178 F.3d at 854. That said, isolated incidents of delay, medical malpractice, and mere disagreement with a doctor's medical judgment do not rise to the level of deliberate indifference. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010); *Walker*, 233 F.3d at 501; *Gutierrez*, 111 F.3d at 1375.

## I. Hydrocele Claim

Richter's hydrocele caused him significant pain, and Wexford medical staff felt that the pain warranted treatment, so the court will assume for present purposes that the hydrocele was an objectively serious medical condition. Still, the summary judgment record would not allow a reasonable jury to find that Drs. Obaisi and Davis consciously disregarded that condition.

The record indisputably shows that both doctors consistently treated the hydrocele and did so reasonably. Doc. 62 at ¶¶ 41-42, 52-54, 56-60, 63-64, 75. The record also shows that most hydroceles pose no health risk other than pain and discomfort, and that Richter's hydrocele fell into this category. *Id*. at ¶¶ 57, 64. As a result, the appropriate treatment was watchful waiting and pain management, and, if desired, aspiration to drain the hydrocele. That is the exact course of treatment the doctors pursued. More serious conditions were ruled out through testing, Richter had regular opportunities to seek medical attention to monitor the hydrocele, he received pain management treatment, and he was offered (but declined) aspiration. Simply put, there is no record evidence indicating that Dr. Obaisi, Dr. Davis, or any other Wexford employee pursued an inappropriate course of treatment, let alone a *blatantly* inappropriate course of

6

treatment. Given this record, Richter cannot satisfy the subjective element of his deliberate indifference claim. *See Chambers v. Mitcheff*, 499 F. App'x 587, 592 (7th Cir. 2013) (affirming summary judgment where the prisoner "failed to present evidence from which a jury might reasonably infer that [the defendants] disregarded his serious medical needs"); *Rones v. Schrubbe*, 451 F. App'x 585, 587 (7th Cir. 2011) (same, where the prisoner "produced no evidence showing that the nurses knowingly disregarded a serious medical condition"); *Williams v. Guzman*, 346 F. App'x 102, 105-06 (7th Cir. 2009) (rejecting a prisoner's claims due to his failure to show that "a state official was deliberately, that is subjectively, indifferent" to his medical needs); *Duckworth v. Ahmad*, 532 F.3d 675, 681 (7th Cir. 2008) (affirming summary judgment where "there [was] no evidence that [the defendants] knew of and disregarded the [plaintiff's] risk of cancer").

When extraneous facts are boiled away, Richter's complaint comes down to a disagreement concerning pain management: he would have preferred different medications. But "mere disagreement with a doctor's medical judgment" is not enough to demonstrate deliberate indifference, *Berry*, 604 F.3d at 441, and Richter has adduced no competent evidence that the medication he received was so medically inappropriate as to amount to deliberate indifference. Prison medical providers are permitted to make independent clinical decisions, and where, as here, a prisoner fails to adduce evidence that treatment decisions departed from accepted professional judgment, a deliberate indifference claim fails. *See Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012) ("[T]he prison physician, as the inmate's acting primary care doctor, is free to make his own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards.");

7

*see also id*. at 1073 ("[The plaintiff] did not present any evidence to show that [the physician]'s decision not to prescribe [a narcotic] was a substantial departure from accepted professional standards."). Accordingly, summary judgment is granted to Defendants on the hydrocele claim.

## II. Back Injury Claim

Richter's back injury claim has to components: objections to his prescription medication regimen; and objections to Dr. Obaisi's alleged failure to refer him to an offsite treatment provider. As to the former, Dr. Obaisi is entitled to summary judgment for the same reasons summary judgment was granted on the hydrocele claim. Richter complained of pain and was treated with pain medication; while he contends that the medication was inappropriate—he would have preferred narcotics—he points to no record evidence supporting that charge. His own testimony, if credited, establishes that he remains in pain even after receiving pain medication, but it does not follow from this that Dr. Obaisi's treatment was incorrect, let alone so outside the bounds of accepted professional standards as to amount to deliberate indifference. *See id*. at 1074.

The same cannot be said of the offsite treatment issue, as a material factual dispute exists as to whether Dr. Obaisi offered to refer Richter for such treatment. Defendants argue that the court should not consider Richter's testimony concerning the conversation he had with Dr. Obaisi regarding outside treatment—testimony in which he denied that Dr. Obaisi offered the referral—because he lacked foundation to testify about it; specifically, Defendants contend that because Richter could not identify when and where the conversation occurred, he cannot testify to its contents. Doc. 74 at ¶ 5-6. Defendants are wrong. Richter's testimony reflects who participated in the conversation (he and Dr. Obaisi), where it took place (Stateville), and roughly when (at some point during the relevant time period, though he cannot identify the particular appointment). Although a jury may discredit Richter's account due to his vagueness about when

the conversation took place, it might reasonably believe him, and his failure to remember certain conversational details is not so extreme as to render the testimony inadmissible. *See A.I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630, 637-38 (7th Cir. 2001) ("McPherson also suggests that Holsworth's testimony about the conference call is inadmissible because Holsworth did not testify to a 'foundation,' which McPherson insists entails specific testimony regarding the names of the participants and the date of the conversation. But no rule of evidence requires a 'foundation'; 'foundation' is simply a loose term for preliminary questions designed to establish that evidence is admissible. … Though Holsworth's testimony regarding the identity of the A.I. Credit representative and the date of the conversation was inexact, it was specific enough to demonstrate the conversation's occurrence and relevance.").

So the parties present two competing versions of the facts regarding the outside treatment issue. Richter testified that although Dr. Obaisi believed him to be a potential candidate for surgery—that much is undisputed—he did not offer to refer Richter for an outside evaluation that could have led to such treatment. Doc. 72 at 6 ¶ 6. Dr. Obaisi, by contrast, testified that he *did* offer this option and that Richter either ignored it or misunderstood what was being offered. Doc. 62 ¶ 24, 27. Determining which version is correct will require assessing credibility, and such assessments are within the sole province of the factfinder at trial, not the court on summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge … ruling on a motion for summary judgment … ."); *Arroyo*, 805 F.3d at 281 ("[M]aterial factual issues … should be resolved at trial.").

At this point, then, the court must assume that Dr. Obaisi knew Richter was a candidate for surgical treatment for his back pain, yet did not refer him to an outside specialist who could

9

have evaluated him to determine if such treatment was appropriate. The question then becomes whether this is sufficient for a reasonable jury to find that Dr. Obaisi was deliberately indifferent to Richter's medical needs. The answer is yes. The parties agree that Dr. Obaisi was aware of Richter's back pain and that he was a candidate for surgical intervention, so subjective awareness was present. And Dr. Obaisi's (alleged) failure to offer an outside referral, despite its being medically appropriate, raises a permissible inference of conscious disregard. *See Petties v. Carter*, 836 F.3d 722, 733 (7th Cir. 2016) (en banc) (finding a genuine question as to deliberate indifference where the physician knew a certain treatment had been recommended for the inmate, but declined to order it).

### III.  Denial of Medication Claim

Richter also complains of medication issues unrelated to his hydrocele or back pain. Richter testified at his deposition that "while he is receiving the same medications, sometimes they are stopped for 20, 30, 50, or 100 days. There has been no consistency." Doc. 72 at 7 ¶ 9.

Denying medication to an inmate without cause may violate the Eighth Amendment. *See Holloway*, 700 F.3d at 1074 (noting that a prison guard's refusal to administer prescribed medication gives rise to a deliberate indifference claim); *Ralston v. McGovern*, 167 F.3d 1160, 1161-62 (7th Cir. 1999) (same). The problem for Richter is that even if he was at some point arbitrarily denied prescribed medications, he has not shown how Drs. Obaisi and Davis were involved in the denial. Deliberate indifference requires "actual knowledge of an impending harm," *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010), and "personal involvement in the alleged constitutional deprivation," *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). All the record evidence supports the conclusion that Drs. Obaisi and Davis regularly renewed Richter's prescriptions, and no evidence suggests that either had any role in ensuring that Richter

actually *received* the prescribed medications. Absent any evidence showing that Drs. Obaisi or Davis played a role in ensuring that he received his medications, Richter cannot proceed on against them on this claim.

## IV. Claims Against Wexford

Wexford is considered a municipality under § 1983 and therefore cannot be held vicariously liable for its employees' conduct. *See Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 790 (7th Cir. 2014) ("In a number of decisions since *Monell*, our court has applied the *Monell* standard to private corporations."). Accordingly, Richter must show that Wexford had a "policy or custom … [that] inflict[ed] the injury … [and was] the moving force of the constitutional violation" he suffered. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978).

Richter does not point to any evidence indicating that Wexford has a policy or custom of denying offsite medical treatment where medically appropriate or of preventing the administration of prescription drugs. Indeed, Richter does not even respond to Wexford's arguments for summary judgment, thus forfeiting his claims against Wexford. *See Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in [a] response … ."); *G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court."); *Witte v. Wis. Dep't of Corr.*, 434 F.3d 1031, 1038 (7th Cir. 2006) ("By failing to raise [an argument] in his brief opposing summary judgment, [the non-movant] lost the opportunity to urge it in … the district court … ."). Wexford therefore is entitled to summary judgment on the claims against it.

**Conclusion**

Defendants' summary judgment motion is granted in part and denied in part. Defendants are granted summary judgment on the hydrocele claim, the portion of the back pain claim pertaining to the medication regimen, the other administration of medication claim, and the claims against Wexford. Because Richter's only claim against Dr. Davis pertains to the hydrocele, she is dismissed from this suit along with Wexford. This case will proceed to trial on Richter's claim that Dr. Obaisi acted with deliberate indifference to his medical needs by failing to refer him to an offsite provider to evaluate surgical options for his back pain.

June 29, 2017

United States District Judge